IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID RAY HUMPHREY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:21-CV-00220-ALM-CAN |
| COMMISSIONER, SSA, | § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court recommends that the Commissioner's decision be **REMANDED**.

**RELEVANT PROCEDURAL HISTORY AND MEDICAL EVIDENCE**

On September 24, 2014, David Ray Humphrey ("Plaintiff") filed his application for disability insurance and disability income benefits ("DIB") under Title II of the Social Security Act [TR 126]. On April 28, 2015, Plaintiff filed his application for supplemental security income ("SSI") under Title XVI of the Social Security Act [TR 113]. Plaintiff alleged an onset of disability date of May 1, 2012 [TR 113, 126]; his date last insured for purposes of his DIB claim is September 30, 2016 [TR 126]. Plaintiff was born on August 6, 1983, making him twenty-eight (28) years of age at the time of alleged onset; thirty-three (33) years of age at date last insured; and thirty-eight (38) years of age at the time of the ALJ's decision [TR 113, 126]. Plaintiff's age classification at all relevant times was that of a "younger individual." *See* 20 C.F.R. §§ 404.1563,

416.963. Plaintiff has at least a high school education [TR 154]. Plaintiff has prior work experience as an electrician and pizza deliverer [TR 153, 686]. Plaintiff has not engaged in substantial gainful activity since May 1, 2012, the alleged date of onset [TR 230].

Plaintiff's SSI application was initially denied on June 2, 2015 [TR 113-125], and again upon reconsideration on August 12, 2015 [TR 182-196]. Plaintiff's DIB application was initially denied on June 5, 2015 [TR 126-138], and again upon reconsideration on August 12, 2015 [TR 141-155]. Plaintiff requested an administrative hearing ("Hearing") [TR 276-277], which was held before an Administrative Law Judge ("ALJ") on August 17, 2016 [TR 7-46]. On November 25, 2016, the ALJ issued an unfavorable decision denying Plaintiff's applications [TR 161-173]. On September 5, 2017, the Appeals Council vacated the ALJ's decision and remanded with instructions to consider Plaintiff's post-hearing memorandum containing objections to the vocational expert's (VE's) testimony [TR 179-80]. Following the remand hearing, the ALJ again denied his claims on July 9, 2018, finding that he was limited to sedentary unskilled work and must use a cane for ambulation, along with other limitations [TR 200-12]. On June 6, 2019, the Appeals Council again vacated the ALJ's decision and remanded with instructions to further consider the medical opinions of record and to obtain supplemental evidence from a VE, if warranted [TR 221-22]. On remand, a third hearing was held, this time before ALJ Daniel Curran on August 27, 2020 [TR 227]. The ALJ denied Plaintiff's claims again on September 25, 2020 [TR 224-255]. After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluations [TR 15-23]:[1]

---

[1] Under the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. § 404.1520(c). Third, if the alleged impairment

At step one, the ALJ found Plaintiff meets the insured status requirements of the Act through September 30, 2016, and that Plaintiff has not engaged in substantial gainful activity since May 1, 2012—the alleged onset date [TR 230]. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the spine, protrusions in the cervical, thoracic and lumbar regions, thoracic radiculopathy, a deviated septum, asthma, and chronic obstructive pulmonary disease [TR 17]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926) [TR 238]. At step four, the ALJ determined Plaintiff has the following residual functional capacity:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) but the claimant can sit for 6-hours total of an 8-hour workday and could stand and walk for 2-hours total of an 8-hour workday. The claimant is limited to occasional bilateral overhead reaching. The claimant can perform no climbing of ladders, ropes, or scaffolds, and no crawling. The claimant can occasionally climb ramps and stairs, stoop, kneel, and crouch. The claimant can perform no work with unprotected heights, moving machinery, or concentrated exposure to respiratory irritants. The claimant can have only occasional exposure to vibrations and to extreme not or cold. In other words, the claimant is limited to work that is indoors, and in a climate-controlled environment. The claimant is limited to incidental interaction with the public, occasional interaction with supervisors, and frequent interaction with coworkers. Finally, the claimant can understand, remember, and carryout simple and routine tasks and is able to perform simple work-related decisions.

[TR 239]. Continuing the step four analysis, the ALJ found Plaintiff is unable to perform any past relevant work [TR 243]. At step five, the ALJ found that, "[c]onsidering the claimant's age,

---

is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform his past work. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability; the burden shifts to the Commissioner at the last step. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that claimant can perform" [TR 244]. Thus, the ALJ concluded Plaintiff has not been under a disability, as defined in the Act, from May 1, 2012, through the date of the ALJ's decision on September 25, 2020 [TR 246].

Plaintiff requested the Appeals Council review the ALJ's decision, and on January 19, 2021, the Appeals Council denied Plaintiff's request for review, making the September 25, 2020 ALJ Decision the final decision of the Commissioner [TR 1-4]. On March 21, 2021, Plaintiff filed the instant suit [Dkt. 1]. On August 20, 2021, the Administrative Record was received from the Social Security Administration [Dkt. 12]. Plaintiff filed his Amended Opening Brief on September 17, 2021 [Dkt. 15]; and the Commissioner's Response was deemed properly filed on June 30, 2022 [Dkts. 20, 21].[2]

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994); 42 U.S.C. § 405(g). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett*, 67 F.3d at 564; *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616,

---

[2] The Commissioner filed his initial Response on November 15, 2021 [Dkt 16]; however, the Clerk of the Court docked this filing as deficient. On November 23, 2021, Plaintiff filed a reply to the Commissioner's Response [Dkt. 17]. Considering that the Commissioner's initial filing and amended filing are identical, the Court recognizes that Plaintiff's Reply applies to the Commissioner's properly filed brief.

620 (5th Cir. 1983). It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. Conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

Disability insurance is governed by Title II, 42 U.S.C. §§ 404 et. seq., and SSI benefits are governed by Title XVI, 24 U.S.C. §§ 1381 et. seq., of the Social Security Administration. The law and regulations governing the determination of disability are the same for both DIB and SSI. *Greenspan*, 38. F.3d at 236. The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff's chief argument is that the ALJ incorrectly analyzed the opinions from his treating physicians, Dr. Barroga and Dr. Rowland [Dkt. 15 at 16]. Specifically, Plaintiff argues the ALJ failed to evaluate each of the *Newton* factors found in § 404.1527(c) [Dkt. 15 at 7]; and the ALJ's failure to conduct such factor analysis was not harmless [Dkt. 15 at 6]. The Commissioner conversely argues that substantial evidence supports the RFC assessment [Dkt. 20 at 20], and moreover, the ALJ properly evaluated Dr. Barroga and Dr. Rowlands' opinions in

accordance with the relevant legal standards [Dkt. 20 at 22]. The Court finds that the ALJ failed to properly consider and discuss the *Newton* factors prior to giving less than controlling weight to Dr. Barroga and Dr. Rowlands' opinions, thus remand is proper.[3]

***Requirements for Giving Weight to Treating Physician***

Under the regulations applicable to Plaintiff's claim, it is clear that "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)) (alteration in original); *see also Esparza v. Berryhill*, No. 3:17-CV-154-L-BK, 2017 WL 6513634, at *4 (N.D. Tex. Nov. 27, 2017) (quoting *Martinez*, 64 F.3d at 176) (standing for same principle), *report and recommendation adopted*, No. 3:17-CV-154-L-BK, 2017 WL 6497898 (N.D. Tex. Dec. 19, 2017). The ALJ may give little or no weight to a treating source's opinion if good cause is shown. *Newton*, 209 F.3d at 455-56 (citing *Greenspan*, 38 F.3d at 237). There is good cause where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456 (citations omitted). However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only if* the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[4] *Id.* at 453 (emphasis in original). The six factors that must be

---

[3] Plaintiff withdrew from consideration his further point of alleged error—whether the ALJ's decision was constitutionally defective because he derived his authority from Commissioner Saul whose appointment violated the separation of powers [*See* Dkt. 17].

[4] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez*, and those courts' reference to subsection (d)(2) refer to the factors present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012). The Court

considered by the ALJ before giving less than controlling weight to the opinion of a treating source are: (1) the length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c); *Newton*, 209 F.3d at 456. An analysis of some of the factors, but omission of others, does not comply with *Newton*'s requirement "that an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Patino v. Colvin*, No. 3:15-CV-618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (finding the ALJ considered some relevant factors, but the omission of three factors was error). The sufficiency or lack thereof of such analysis is a fact-based analysis.[5]

### *Weight Given to Dr. Rowland and Dr. Barroga*

As to Dr. Rowland's opinions, the ALJ stated, in relevant part:

> The claimant presented to Teddy Rowland, M.D. with the Hugo Medical Clinic in January 2019 to address complaints of back pain and establish care (Exhibit 24F/48). On clinical examination, his oxygen saturation was 99%, he seemed to be in moderate pain, and his cervical and thoracic spine were tender with decreased strength on the left side. He was assessed with degenerative disc disease, back pain not otherwise specified, and tobacco dependence (Exhibit 24F/49).
>
> Dr. Rowland completed a treating source statement that from a mental standpoint, the claimant is not limited in understanding, remembering, or applying information, in his ability to interact with others, in his ability to concentrate, persist, or maintain pace, and in his ability to manage oneself (Exhibit 28F/7-8; 29F/7-8). Dr. Rowland

---

further notes that for all claims filed on or after March 27, 2017, the Rules in § 404.1520c (not 1527) apply. Also relevant, on March 27, 2017, the Social Security Administration rescinded Social Security Ruling 96–2p, which discusses giving controlling weight to treating source medical opinions, as well as two other related rulings. Rescission of Social Security Rulings 96–2p, 96–5p, and 06–3p, 82 Fed. Reg. 15263–01 (Mar. 27, 2017). Under the new rules, "adjudicators will not assign a weight, including controlling weight, to any medical opinion for claims filed on or after March 27, 2017." Because of the date Plaintiff filed his claim – September 24, 2014 and April 28, 2015— the older treating physician rules apply to the Court's consideration herein.

[5] To be clear, "the Newton court limited its holding to cases where the ALJ rejects the sole relevant [treating or examining] medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009); *accord Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

> also opinioned that the claimant is unable to sit, stand, or walk for longer than 15-20 minutes, would be off task for greater than 25% of the time, and would miss more than 4-days of work (Exhibit 28F/5, 9; 29F/5, 9).
>
> The claimant presented to Dr. Rowland in April 2019 to address complaints of chronic obstructive pulmonary disease (Exhibit 24F/38). His oxygen saturation was 97%. He appeared to be in moderate pain, but his lungs were clear to auscultation and percussion with no symmetric expansion and no dyspnea (Exhibit 24F/40). X-rays of the claimant's chest in May 2019 revealed no acute abnormality (Exhibit 30F/39). Follow-up x-rays of the chest in July 2019 revealed clear lungs (Exhibit 30F/49).
>
> The claimant presented to Dr. Rowland in October and December 2019 to address complaints of degenerative disc disease (Exhibit 24F/8, 15). The claimant was noted to have an established diagnosis of chronic obstructive pulmonary disease, but here were no associated symptoms (Exhibit 24F/15). On clinical examination, the claimant seemed to be in moderate pain and his cervical and lumbar spine was tender (Exhibit 24F/9). His oxygen saturation was 97%. The claimant also revealed pain with range of motion in the neck, back, left hip, left knee, left ankle, and left leg (Exhibit 24F/16). He was assessed with chronic obstructive pulmonary disease, intervertebral disc disorders with radiculopathy in the lumbar region, and nicotine dependence with cigarettes. He was advised to avoid cigarettes (Exhibit 24F/9, 17).
>
> The claimant returned to Teddy Rowland, M.D. with the Hugo Medical Clinic in January 2020 to address complaints of degenerative joint disease (Exhibit 24F/4). On clinical examination, the claimant seemed to be in moderate pain and his thoracic and lumbar spine was tender (Exhibit 24F/5). He was assessed with thoracic region radiculopathy and nicotine dependence with cigarettes (Exhibit 24F/6).
>
> ….
>
> Finally, the opinion of Ted Rowland, M.D. is given partial weight as I agree that from a mental standpoint, the claimant is not limited in understanding, remembering, or applying information, in his ability to interact with others, in his ability to concentrate, persist, or maintain pace, and in his ability to manage oneself (Exhibit 28F/7-8; 29F/7-8). However, I find no weight in Dr. Rowland's opinion that the claimant is unable to sit, stand, or walk for longer than 15-20 minutes, would be off task for greater than 25% of the time, and would miss more than 4-days of work as subsequent physical examination found the claimant's heart had regular rate and rhythm and his extremities and sensation were intact (Exhibit 28F/5, 9; 29F/5, 9; 31F/24). The claimant's gait was also observed to be normal (Exhibit 31F/8).

[TR 234-235, 243].

Pertaining to Dr. Barroga, the ALJ provided the following:

> The record shows the claimant sought treatment from Deno Barroga, M.D., for complaints of neck and low back pain and chronic pain in joints (Exhibit 4F, 5F). An MRI of the cervical spine completed on March 16, 2015 showed multilevel degenerative changes and small disc bulges protrusions with no significant central stenosis or cervical spinal cord impingement and mild moderate foraminal stenosis (Exhibit 4F). A lumbar spine MRI revealed multilevel degenerative changes and posterior disc (Id). An MRI of the thoracic spine showed minimal multilevel degenerative changes with at least four small thoracic disc protrusions with no thoracic spinal cord impingement or significant thoracic central stenosis noted (Id). On March 23, 2015, Dr. Barroga examined the claimant due to a complaint of chronic neck and low back pain and chronic pain in the joints. The physical exam revealed the claimant was 5 feet 7 inches tall and weighed 175 pounds. He was in no acute distress. Motor strength was 4/5 in upper and lower extremities and decreased range of motion of the cervical and lumbar spine. His gait was normal and no assistive device was noted (Exhibit 4F).
>
> ….
>
> Deno B. Barroga, M.D. completed a physical treating source statement on December 27, 2017 stating that he treated the claimant monthly since 2011. He diagnosed the claimant with other myositis, unspecified; spinal enthesopathy, site unspecified; myalgia; fibroblastic disorder, unspecified; lumbago with sciatica; pain in limb, hand, foot and fingers; cervicalgia; and chronic pain syndrome. Dr. Barroga further opined the claimant was able to carry up to 10 pounds rarely but he could never lift. He could not stand, walk or sit for any periods of time. He required the option to sit and stand at will. He required the use of a single point cane or another assistive device to ambulate effectively. He could never reach overhead or reach in any other direction and never push and/or pull, but could handle and finger rarely and feel occasionally. He could rarely use foot controls bilaterally. He could never climb ladders or scaffolds, never stoop, never kneel, never crouch, and never crawl, but could rarely climb stairs or ramps and balance, and occasionally rotate his head and neck. He could never have exposure to unprotected heights; moving mechanical parts; humidity and wetness; dust, odors, fumes or pulmonary irritants; extreme cold and heat; and vibrations, but could occasionally operate a vehicle. Furthermore, Dr. Barroga opined the claimant was likely to be off task more than 25% and was likely to be absent from work more than 4-days per month (Exhibit 15F).
>
> The claimant went to Deno B. Barroga, M.D. on January 23, 2018 with complaint of low back pain. Notes indicate the claimant was alert and oriented times four. Lungs were clear bilaterally. Extremities had no clubbing, cyanosis or edema. Muscle strength was 4/5 bilaterally. Range of motion of the low back was decreased. His neck was supple and had no masses. Sensation was decreased bilaterally. Reflexes were 1+/1+ bilaterally. The claimant was given an assessment

> of other myositis, unspecified; spinal arthropathy, site unspecified, myalgia, fibroplastic disorder, unspecified: lumbago with sciatica: pain in limb, hand, foot and fingers: cervicalgia: and chronic pain syndrome (Exhibit 18F).
>
> ….
>
> As for the opinion of Deno Barroga, M.D. that the claimant has been able to lift no pounds and cannot sit, stand or walk since 2011, I give no weight to as the claimant worked at substantial gainful activity in 2012 and this opinion is inconsistent with subsequent physical examination that found the claimant's heart had regular rate and rhythm and his extremities and sensation were intact (Exhibit 15F/4-7; 31F/24). The claimant's gait was also observed to be normal (Exhibit 31F/8). In addition, the following year the claimant stepped on a nail, although this opinion suggested the claimant could do no walking (Exhibit 30F/13).

[TR 231-234, 243].

As an initial matter, no *other treating physician's opinion* contradicting Dr. Rowland or Dr. Barroga's findings and/or contrasting their opinions against any other treating physician's opinion has been identified. Absent any such findings, the ALJ cannot bypass or otherwise avoid the factor analysis when declining to give controlling weight to a treating physician. *See Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009); *Yearout v. Astrue*, No. 10-CV-430, 2010 WL 4860784, at *10 (N.D. Tex. Oct. 26, 2012) ("The ALJ here did not find as a factual matter, and based on competing first-hand evidence, that another doctor's opinion was more well-founded than [the treating physician's] opinion, or weigh [the treating physician's] opinion on disability against the medical opinion of other physicians who had treated or examined Plaintiff and had specific medical bases for a contrary opinion . . . . The ALJ was therefore required to perform the six-factor analysis . . . before rejecting [the treating physician's] opinion."); *Boykins v. Berryhill*, No. 3:17-cv-571-BT, 2018 WL 1532373 at *4 (N.D. Tex. Mar. 27 2018) (citing *Yearout*, 2010 WL 4860784 at *10) (holding the ALJ erred in not conducting a relevant factor analysis when no competing first hand evidence was contained in the record).

The Commissioner offers that the ALJ properly discounted Dr. Rowland and Dr. Barroga's opinions because of the "numerous instances where Plaintiff's gait was observed to be normal with no need for an assistive device" [Dkt. 20 at 23]. The Commissioner is correct the ALJ's opinion states in evaluating both Dr. Barroga and Dr. Rowland's opinions that other record evidence suggests Plaintiff's gait appeared to be normal [TR 243]. However, the ALJ's "contradicting [gait] evidence" is problematic. The record evidence referenced by the ALJ is a bare treatment note from Dr. Mark Gibbons with Northeast Texas Ear, Nose and Throat Center on February 21, 2020 [TR 2111-2114]. Plaintiff saw Dr. Gibbons to discuss treatment options due to his right deviated septum and his severe nasal septal perforation [TR 2113]. At this singular visit, Dr. Gibbons noted, among other things, that Plaintiff's gait was normal [TR 2113]. However, notably, when Dr. Gibbons saw Plaintiff for a pre-op visit on March 13, 2020, his records further recognize that Plaintiff had a medical history of using assistive devices and he was discharged from surgery via wheelchair [TR 2123, 2129]. Moreover, in finding that Drs. Barroga and Rowland's opinions should be given no weight regarding Plaintiff's ability to sit, stand or walk, lift no pounds, would be off task for greater than 25% of time, and would miss more than 4-days of work, the ALJ stated that that these opinions were contradicted by "subsequent physical examination that found the claimant's heart had regular rate and rhythm and his extremities and sensation were intact" [TR 243]. This report is derived from a post-op record from Dr. Gibbons' septoplasty, nasal button placement procedure in 2020 [TR 2128-2129]. These contradicting sources are insufficient to overcome the persuasiveness of Drs. Rowland and Dr. Barrogas' opinions. *Cooley v. Comm'r*, No. 2:20-cv-46, 2021 WL 4221620, at *7 (S.D. Miss. Sept. 15, 2021) ("[S]ignificant gaps exist in the ALJ's discussion of [the treating physician's] medical opinion the leave this Court unable to build a 'logical bridge' between the evidence and his findings.") (citing *Hardy v. Comm'r of Soc.*

*Sec.*, 554 F. Supp. 3d 900, 907 (E.D. Mich. 2021)); *Hill v Comm'r*, No. 4:16-cv-00025-CAN, 2017 WL 1049624 at *7 (E.D. Tex. Mar. 20, 2017) (concluding that, because "the ALJ at no juncture made a finding that another treating or examining physician's opinion was more well-founded than [another treating physician]," the ALJ could not avoid the relevant factor analysis).

      Here, the "ALJ was required to consider each of the Section 404.1527(c) factors before declining to give [controlling] weight to the claimant's treating specialist." *Osborn v. Berryhill*, No. 3:16-CV-44-B-BN, 2017 WL 2312910, at *3-4 (N.D. Tex. May 11, 2017 (Horan, J.) (citing *Newton*, 209 F.3d at 456), *report and recommendation adopted*, No. 3:16-CV-44-B-BN, 2017 WL 2306581 (N.D. Tex. May 26, 2017). The Commissioner advances that the ALJ "narratively" considered the six factors, specifically pointing out that the ALJ pointed out that Dr. Barroga was a treating source and he considered the length of the treatment relationship and frequency of visits [Dkt. 20 at 22]. However, absent from the Commissioner's brief is any discussion of the *Newton* factors concerning Dr. Rowland or the remaining factors in discussion of Dr. Barroga. An analysis of some of the factors, but omission of others, does not comply with *Newton*'s requirement "that an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Patino v. Colvin*, No. 3:15-CV-618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016). In addition, no reference is made anywhere in the opinion to the doctors' specialty or even that their treatment related to Plaintiff's pain management. *Cf. Seals v. Comm'r*, No. 4:17-CV-792-CAN, 2019 WL 1140183, at *7 (E.D. Tex. Mar. 12, 2019) ("[T]he ALJ narratively examined [the treating physician's] opinions, detailing that he was a treating source, *specializing in psychiatry*, identifying the dates of the medical source opinions and again discussing at length the supportability and consistency factors . . . .") (emphasis added). The Commissioner's briefing does not argue the ALJ considered this

factor. Before giving less that controlling weight to either doctor, the ALJ must have considered the length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, the support the doctors opinion afforded by the medical evidence of record, the consistency of the doctors opinion with the record as a whole, and their specialization. *Newton*, 209 F.3d at 456. The ALJ only considered *some* of the factors; therefore, analysis of the *Newton* factors is insufficient.

The Court cannot say for certain whether the ALJ would have given more weight to Drs. Rowland and Barroga's opinions and would have found Plaintiff disabled if the ALJ had conducted a more thorough analysis of the relevant factors. *See Newton*, 209 F.3d at 453-58 (stating the Fifth Circuit requires the ALJ to consider each factor of 20 C.F.R. § 404.1527(c)(2), not just some factors). In making the RFC determination, the ALJ disregarded the treating physician's opinions [TR 243] that Plaintiff cannot sit, stand or walk for longer than 15-20 minutes, would be off task for greater than 25% of the time, and would miss more than 4-days of work [TR 243]. Moreover, the ALJ's RFC determination completely disregards the years of treatment records that Plaintiff used an assistive device [TR 1657, 1814, 1894, 1896, 1899, 1902, 1962, 1965, 1968, 1970, 1979, 1982, 1985, 1987, 2123]. Dr. Rowland opined in a Medical Source Statement on January 22, 2019 that Plaintiff is "unable to sit, stand or walk for longer than 15-20 minutes due to increased pain in lower back and legs"; that his symptom are "not going to get better"; he would not be able to maintain regular attendance; he would be off task more than 25% of the time; and he would miss more than four days of work per month [TR 2004-2009]. Dr. Barroga, who Plaintiff has seen since 2011 and treated him monthly, completed a Medical Source Statement on December 27, 2017 finding that he would be off-task more than 25% of the time; he would miss more than four days of work per month; Plaintiff cannot lift any amount of weight and can rarely carry ten pounds;

he requires an at-will sit/stand option; he requires the use of a case or other assistive device and he can only walk ten to twenty feet without a cane; he cannot reach overhead or push/pull; and he can never climb ladders, stoop, kneel, crouch, crawl but can rarely climb stairs and balance [TR 1652-1654]. Had the ALJ considered the opinions that Plaintiff would be absent frequently from work due to his medical conditions and his functional limitations, it is plausible that the ALJ may have come to a different RFC determination. Indeed, the VE testified that if Plaintiff would be off-task 20% of the workday or he missed four days of work per month he would not be able to find a job [TR 105]. As such, the ALJ committed prejudicial error. *Temple v. Saul*, No. 4:19-cv-3320, 2020 WL 6075644, at *5 (S.D. Tex. Oct. 14, 2020) (finding that the ALJ's error in failing to assess claimant's use of a cane was prejudicial because "had it not been for the ALJ's error, the ALJ might have well found that Plaintiff was limited because she needed to use a cane or a walker at work, and that finding could well have led the ALJ to arrive at a different conclusion as to whether Plaintiff is disabled within the meaning of the Act."); *see also Davis v. Berryhill*, No. 4:16-CV-0429-O-BL, 2017 WL 3701689, at *10 (N.D. Tex. Aug. 10, 2017) ("In making her RFC assessment, the ALJ rejected specific medical opinions of Dr. Tondapu and Dr. McHenry. To characterize their estimated absences as speculation ignores their medical judgment. Had the ALJ considered the medical opinions regarding estimated monthly absences rather than simply rejecting them as speculation, it is conceivable that she may have reached a different conclusion"), *report and recommendation adopted*, No. 4:16-CV-0429-O-BL, 2017 WL 3674856 (N.D. Tex. Aug. 25, 2017). Therefore, remand is required.

## CONCLUSION AND RECOMMENDATION

Pursuant to the foregoing, it is recommended that the decision of the Administrative Law Judge be **REMANDED** to the Commissioner of Social Security for further proceedings consistent with this opinion.[6]

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 1st day of September, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[6] By remanding this case for further administrative proceedings, the Court does not suggest in any way that Plaintiff is or should be found disabled.

REPORT AND RECOMMENDATION – Page 15